UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAMELEON ADVERTISING & MARKETING SOLUTIONS INC., <br><br> Plaintiff, <br><br> -against- <br><br> KEME PRODUCTION LLC and MOUSTAFA AHMED HASSAN KAMAR, <br><br> Defendants. | 26-cv-123 (AS) <br><br> OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Before the Court is an application for a temporary restraining order (TRO) filed by a Chameleon Advertising & Marketing Solutions Inc. (Chameleon) against Egyptian pop star Moustafa Ahmed Hassan Kamar (Moustafa Amar) and Keme Production LLC (Keme Production). Chameleon argues that it has an exclusive contract with Amar to promote any of his concerts in the United States. Dkt. 2 ¶ 1. Tonight, Amar will perform in Washington, DC as part of a U.S. tour—but with different promoters from Chameleon. Dkt. 2 ¶¶ 31–41. Chameleon filed this suit as well as a motion for a preliminary injunction and TRO to stop the tour in its tracks, starting with Amar's performance tonight. Dkts. 3, 7. The complaint and application for a TRO were filed yesterday, with counsel emailing the assigned chambers at 8:58 a.m. today concerning the necessity for a same-day hearing.

The application was sent to this Court in its Part I capacity, and the Court held a same-day hearing on the TRO. Following that hearing, the application is DENIED.

The standard for a TRO is the same as that for a preliminary injunction. *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Zesty Paws LLC v. Nutramax Lab'ys, Inc.*, 157 F.4th 194, 197 (2d Cir. 2025). "A temporary restraining order, like a preliminary injunction, is an extraordinary remedy that will not be granted lightly." *Dist. Council 1707 v. New York Ass'n For New Americans, Inc.*, 2003 WL 22871926 (S.D.N.Y. Dec. 4, 2003) (citing *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)).

Chameleon has failed to make the required showing of irreparable harm. Its brief devotes only two sentences to it, simply asserting that "if Defendants are permitted to proceed with the performances as scheduled, Plaintiff's other clients will flee to competitors and Plaintiff's business will hollow out." Dkt. 7 at 19. As support, it points to a declaration that says the following, all based

on the declarant's say-so, without further evidentiary support: (1) exclusivity helps Chameleon enter other contracts related to performances because it allegedly defrays the risk that the performance artist will cancel, Dkt. 6 ¶ 12; (2) it helps stabilize the relationship between Chameleon and its clients, *id.* ¶ 13; (3) losing this client hurts Chameleon's "business relationships, reputation, and goodwill with sponsors, venues, and promotional partners," *id.* ¶ 48; and (4) if its rights aren't enforced, Chameleon's other exclusive contracts will lose credibility, leading to a loss of clients, *id.* ¶ 52.

These are potential harms—and Chameleon surely has standing to enforce its contract. But neither this declaration nor the briefing explains why these harms are not compensable by money damages. They are the typical harms stemming from a breach of contract and "[a] breach of contract inevitably yields damages that can be monetized, whose harm is reparable." *Downloadcard, Inc. v. Universal Music Grp., Inc.*, 2002 WL 31662924, at *5 (S.D.N.Y. Nov. 26, 2002). Besides, if Chameleon is worried that not enforcing its rights will encourage others to breach its contracts, it can remedy that by enforcing its rights and pursuing money damages in this case, exactly what it is doing. To the extent that the declaration points to how Chameleon will be viewed by others in the industry if the concerts go forward with a different promoter, the suggestion of immediate and irreparable harm is speculation, backed by no evidence whatsoever.

When asked at the hearing what concrete evidence Chameleon could provide, counsel came up blank. They did direct the Court to *John E. Andrus Memorial, Inc. v. Daines*, 600 F. Supp. 2d 563 (S.D.N.Y. 2009), as support. There, the court found an irreparable injury when not granting injunctive relief would effectively force a nursing home to close, *id.*, and Chameleon analogizes itself to that plaintiff—it, like the nursing home, would be driven out of business. But Chameleon overlooks the differences between this case and *Daines*. In *Daines*, there was no prospect of money damages because the defendant was entitled to sovereign immunity. *Id.* at 572 n.6. Further, two witnesses testified that a failure to grant injunctive relief would result in immediate harms in terms of patient referrals. *Id.* at 571. Based on the record before the court, it was "reasonable to conclude that new admissions are likely to stop and that family members will seek to place existing residents at alternative facilities of their choosing, thereby dashing the goodwill the [plaintiff] has established in its forty years of operation, placing the Andrus in financial peril that cannot be remedied by monetary damages, and rendering any relief that may ultimately be granted by this Court meaningless." *Id.* at 572. Here, money damages are available, and there is no concrete evidence that Chameleon will be run out of business just because Amar's tour moves forward over the next couple of weeks. Further, in *Daines*, the court relied on the fact that there would also be injury to the *patients of the nursing home* who "would be irreparably harmed if forced to relocate to a new facility." *Id.* at 573. Chameleon, by contrast, alleges no harm of the sort, but only the prototypical breach-of-contract harms that can be remedied by monetary relief.

The lack of any irreparable injury is reinforced by Chameleon's delay in filing this motion. At today's hearing, Chameleon conceded that this tour was announced as early as November. Instead of filing this suit then, Chameleon instead waited until yesterday, the *day before the tour starts*, to file for relief. And it only emailed the Court seeking an expedited hearing today, just hours before

the first concert is set to begin. "[D]elay alone may justify denial of a preliminary injunction." *Tough Traveler, Ltd. v. Outbound Prods*, 60 F.3d 964, 968 (2d Cir. 1995). That's because "the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion or preliminary relief and suggests that there is, in fact, no irreparable injury." *Id.* (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985)). While Chameleon pointed at the hearing to attempts to notify defendants of its rights and to try to work towards a resolution, there is no evidence before the Court that Chameleon was induced into thinking that the issue would be resolved, such that only a same-day emergency motion was feasible. "Attempts to settle can provide a buffer only when there is a prospect of resolution, and there has been no such showing here." *Two-Hands IP LLC v. Two Hands America, Inc.*, 563 F. Supp. 3d 290, 301 (S.D.N.Y. Sept. 28, 2021).

Finally, Chameleon has failed to show that a TRO is supported by the "public interest" or "balance of the equities." Instead, these factors point against the extraordinary relief that Chameleon seeks: derailing a tour set to begin tonight, and continue over the next few days, with arrangements made and fans set to attend, all based on an eleventh-hour application.

For these reasons, the application for a TRO is DENIED.

SO ORDERED.

Dated: January 8, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge